Our final argument of the morning is in Appeal No. 24-1843, Reyna Cruz v. Costco Wholesale Corporation. Good morning. George R. Jones on behalf of the appellant. We are here to ask the court to reverse summary judgment of the lower court. Your Honors, have a brief I'm sorry I'm dealing with a little laryngitis so I apologize. Looking at the facts in a light most favorable to the non-moving and looking at three primary issues. The plaintiff's testimony, Mrs. Cruz, her under oath testimony, the incident reports filled out by the Costco manager, front-end manager Mr. Shapiama, and finally the video, the surveillance video, looking at those three pieces of evidence together in a light most favorable within the context of summary judgment. Clearly those three items establish constructive notice. One, the plaintiff, the plaintiff unequivocally testified that she slipped on a pink wet substance. She didn't equivocate at all. She didn't say somebody bumped me. She didn't say I wasn't sure if I slipped. She didn't say maybe I tripped. She was a hundred percent sure and she saw the substance after she fell in the Costco store on her shoe, on the floor, and on her pants. Mr. Arjonis, is there any evidence in the record as to how extensive a spill it was? I think people agree, it seems to me, that you can't really see a spell from a spill, sorry, from the video camera and I think your client testifies that she saw perhaps several drops of what smoothie or liquid or some whatever it is, some sort of liquid, but is there any evidence about how extensive it is or how visible it is to people in the area? Well, Your Honor, after my client slipped, she said there was a small puddle. Now the drops come from the Costco report that was generated either that day. Can you point me to where she says that because I was I've been trying to look for that. Your Honor, I don't have the page in there. You know, we'll concede that this wasn't a huge puddle, but this was enough for her to slip on. I think she said that there was some wetness on the floor and there was enough wetness to get on her on her shoe, her left shoe. There was enough to get on her pant leg, Your Honor. And more importantly, the issue with visualization I'd like to address, she could see it. She saw it. Now obviously, as she was approaching the food court, she was looking. I think she was going to order some food. So, I mean, that's a distraction created by Costco. So she's walking towards the smoothie, which I believe was a smoothie, and she slipped. Now the report drafted by the Costco employee, Your Honor, by the Costco front-end manager said it was unequivocally smoothie. He said that there were five drops. Now drops, I understand them. Drops are probably smaller. I'll admit that this is a busy store, and people who shop there have a right to shop in a safe environment. So clearly my client slipped on something. Clearly the Costco manager in the report, Your Honors, doesn't say, well, I got this information from an employee, or I got the information that there were five drops. Mr. Arjonas, I had a similar . . . Judge Lee's question, I had a very similar question. It's a good question, okay, because the record doesn't . . . it really doesn't answer it. What I took away from more from between the lines of your brief, tell me whether this is fair or unfair, is that it was enough to cause what we can see on the video to have happened. Whether it's five drops, three drops, a little puddle, who knows what a little puddle is or means, but it was enough, it was enough for her left foot to totally come out from, you know, slide forward and totally come out from under her and cause the fall. I mean, is there anything more in the record to help us on that? That's all we have. The client's testimony, Costco employees said that they didn't see anything at all, but clearly there was wetness on the floor that didn't belong there. Clearly, this was a smoothie or . . . So the answer to Judge Lee's question is that it's unsettled. We don't know. We don't know from the record. We know there was something. Nobody . . . because Costco is not taking the position the floor was completely dry. Yes, sir. Your Honor, we don't know. We don't know other than it was enough for Ms. Cruz to slip and fall and be taken away by the ambulance on that day. Now, most importantly, I'd like to reserve a little time for rebuttal. Most importantly, the video here. So the video, Your Honors, I understand it's difficult to see anything in terms of water on the ground, but we have the area, the specific area where the plaintiff slipped and fell under surveillance for 28 minutes. So for 28 minutes, no one goes to that spot and cleans it. For 28 minutes, no one goes to the spot and says, oh, I'm adding to it. I slipped. I dropped something. This is the food court at lunchtime, right? Yes, sir. Yes, sir. Food court on a weekday, lunchtime. Yes, sir. And it is busy, busier at the time. The only way a pink substance or a smoothie could have gotten there is someone dropped it, either a customer or an employee of Costco. And Costco sells strawberry smoothies or raspberry smoothies that could resemble a pink substance. I don't think, though, that there's much of it, perhaps there is, but I don't see, at least in this record, much of a dispute that there was some liquid on the floor that she slipped on because she obviously slipped on something, right? But your argument is that the record has sufficient facts from which a reasonable jury can conclude that Costco had constructive knowledge of that, right? Yes, sir. And I guess my question kind of goes to, if it was a large spill, then presumably, you know, it would be noticeable. But the question is, if it's a small spill, something that one couldn't see, something that your client couldn't see when she was approaching it, what is there in the record to show that Costco would have been able to discover that liquid using kind of ordinary care or that, or its normal procedures would have uncovered that? Or if it had a more vigorous procedure, it wouldn't have, it would have uncovered that? Well, Your Honors, with all due respect, this is a spill that was seen by my client after she fell. Now, her focus was, am I gonna buy a smoothie? Now, as substantive law applies, if a distraction is created by a store, a business, so you look at the sales, what are you buying? There is an exception to the open and obvious rule here. So my client wasn't staring at her shoes looking for five or six drops of smoothie. But clearly, if someone from Costco is assigned to keep the area clear, they would have seen it and cleaned it up. Your Honors, I would like to observe whatever... I guess, how do you know they would have seen it? And how do you know they would have seen it? What in, what in the record gives, would provide a reasonable jury with the basis to think that if Costco had someone patrolling the area, they would have seen whatever she flipped up? Well, Your Honor, the only reason you can't see this spill with the surveillance cameras, so I think the cameras are almost as high as this ceiling here, Your Honor. So it's, and it's at an angle. And the sandal case, not withstanding that it was a district case, does address that. For some reason, you could even, there was someone mopping in the video, I'm not sure if you watched the whole video, someone was mopping. Now there's a dispute of whether it was dry or wet mop. But that wet, that mop looked heavy, Your Honor. He's mopping the floor, puts a sign up, a hazard sign up, a wet floor sign up. You can't see water. But just because a camera at 50 feet doesn't pick up five drops of smoothie, clearly someone, and I wear glasses, or someone with reasonable vision who's walking through with the mop would see those smoothies. Absolutely, Your Honor. And it's something that's reasonably anticipated by Time's Up, by Costco, because they sell soft drinks. And someone, looking at the video, someone from Costco did use a dry mop in that area, right? Not exactly where your client fell, but in the area adjacent. And that person didn't, there's nothing in the record that would suggest that person saw anything. Your Honor, if you, you're right, you're 100% right. They were pushing the dry mop, they never looked into the corner. It was the, they never looked into the corner where Ms. Cruz slipped. And it was a little bit further. I thought she slipped in front of the counter, though. Yes, sir. But to the right, the dry mop came close. There was a center counter there. The dry mop, just kind of the person pushing it. Now, I don't see exactly, but her head never tipped to the right to look. They never looked in that area. And that just feeds into another portion of our claim here, is that maybe their policies were not reasonable. Your Honor, I'm out of time. Yeah, we'll give you a short rebuttal. Let's hear from Costco's counsel. Thank you. Thank you very much. Good morning, Your Honors, and may it please the Court, I'm Stacey Foucault for Defendant Costco Wholesale Corporation. Before I hit on the two points, I wanted to comment about a couple things. The plaintiff never testified there was a puddle. She made it very clear. I think someone had asked for the citations for deposition on page 3948 and on to 49. She made it very clear she only saw one drop. There is absolutely no testimony from all of the employees or from the plaintiff that there was something that anyone would describe as a puddle. We've also never made an open and obvious argument here, so I don't understand how distraction is relevant. Counsel also can't claim that there was a dispute as to whether that employee who was cleaning up, I wasn't sure really if he was talking about before the incident or after the incident about a dry mop. There is no dispute. Every employee that testified, the mop that you saw, Your Honor, that mentioned prior to the incident, that was a dry mop. The dry mop didn't go to the area where that was actually where the fall occurred. Yes, I think what counsel was referring to was the mopping up after the incident and that was the court manager, Mr. Borman, he made it clear he used a dry mop as well. Counsel was trying to say that people were mopping and you couldn't see wetness. That's because there was no wetness. They were using a dry mop, so I wanted to point that out. Also, counsel was talking about where the employee was looking when she, the employee who mopped, put the mop through, the dry mop through there before this incident. Counsel was saying she never inspected the area at issue. That's his interpretation of video. That's not a fact. There is no testimony. There is no evidence as to where her eyes were. Is it an unreasonable interpretation? I believe it is. The employees are all very well trained to be looking out for things on the floor. Her entire job was maintenance. She wasn't some other type of employee that happened to be walking through with a dry mop. That's her entire job all day long. She's looking for drops as well as puddles, right? She's looking for anything. Absolutely. Her job is to look for anything and she's got a dry mop with her in case she needs it while she's doing this. For counsel to say that she can't see something unless she's turned and looking down at it, it is just not logical. Ms. Vogel, can I ask you a question? The company seems to take the position in its brief, which surprises me. The brief seems at odds with itself on this point. Maybe you'll say you just haven't read it right, which maybe. But on page 20 of your brief, you say, quote, there is no evidence that any substance existed on the floor prior to the plaintiff's fall. Okay? Quote, unquote. And that throws me off because most of your brief then goes on to argue in terms of constructive notice. And I think that the first part, what I quoted, that can't possibly be right. Because the plaintiff, there is evidence, the plaintiff testified that she slipped on a liquid and then felt it. Yes, and we are not, and that may have been misstated. We are absolutely not disputing. So it's all about constructive notice. Absolutely. For purposes of summary judgment, the court has to accept what the plaintiff says is true. We are not disputing. So could a reasonable jury infer that whatever was there must have been there for at least 28 minutes? No. Why not? Because this is a drop. Counsel keeps talking about a spill to try to insinuate as if there was this large area that would have been visible on video. It was not. If someone had done a large spill that caused a puddle as we've been talking about, yes, I absolutely, you would have seen that occurring on the video. But we're talking about drops here that when you zoom in on the video as tight as you can get, even two seconds before this incident, it's undisputed you can't see it. That's how light it is. This could come from anything. And as we've known, there is something that drops in the area that very well likely could have been it. Very well likely. Sounds to me like sheer speculation. And was there anything else in those 28 minutes besides the toddler who dropped the toy? There are people walking over the area that had just gotten things or that had things in their hand. Correct. And if I can comment why I don't believe it's mere speculation, it is because in a case like this, the plaintiff has to put on some evidence, some support to show how long the substance had been on the floor to withstand summary judgment. When the plaintiff is not able to do that, as in this case, it is undisputed. They cannot show how long it was on the floor. We are showing, what is likely? I think it's more disputed than that. That's what I wonder about. The plaintiff knows what happened to her and she is so indicated. And then the plaintiff has the video and is making the arguments that seem available from the video. And it seems like what happens when it shifts over to the company's perspective is that you're asking us to resolve what actually happened here. And I think isn't that what a trial is for? No, and I don't believe we're asking you to do that. What I believe we're asking you to see is that we have five, six different ways that this area had been inspected, that there was a policy and procedure in place. We have a floor walk that took place hourly. We had an employee that walked through with a mop. We had managers that were nearby. That's how you do constructive notice. How can we rule out that that wasn't there? That being the drop or drops. They weren't there for 28 minutes. It's Judge Hamilton's question. How can we rule that out from this evidentiary record? Because what you look at is for a constructive notice perspective, was the defendant doing what they should have done to ensure it wasn't there over a significant period of time? Because was an employee in that area walking through inspecting the area? Yes. Were there employees during the 28 minutes? Yes. You have supervisors that are at the desk. You have employees that are behind the counter. You have the employee doing the dry mop through the area. You have employees that are performing their job and that are ensuring that this location is safe and clean. So what you seem to be saying is it's impossible for that liquid to have been on the floor? No. No? For more than a minute or two? I think the evidence shows that more likely than not it was there for three minutes. And is that our standard? No. There is no standard in Illinois for timing. No, no, no. The standard of more likely than not based on this evidence. If the plaintiff had given us evidence as to timing, I would agree there would be a question as to timing at that point. But the plaintiff has not proven or has not even given an inference as to how long this liquid was on the floor. Sure she has. The 28 minutes in the video in which you don't see anything spilled. But Your Honor, you're saying that there would be a visible spill. We have a drop here. An event. An event that would be visible. But you're saying it would be visible. And so I think for a drop... Is that wrong? Yes. Because for a drop to get on the floor, any of us could do something and not even know that we just caused a drop on the floor. Do we have a drink in our hand? Do we have, you know, our kid has... There was multiple children that were in carts that went over this area. There are so many things that can cause a drop on the floor in retail places. Ms. Volkow? Yes. Could I offer you a hypothetical? Let's assume for the purpose of discussion that a reasonable jury can conclude that there were drops of liquid on the floor for at least 28 minutes. Okay? I know you may disagree with that, but let's assume that's the case. Is that enough of a showing for the plaintiff to meet its burden of establishing constructive knowledge here? No. And I would say based on the case law, the Illinois case law, that is not. Where you have a situation like this... Because I do believe there's a caveat. I think the defendant has to show they have a sufficient and reasonable inspection policy that was being complied with. And we have shown that. They're doing the hourly walks that are not only documented by the person that does them, they're also signed off on by a manager to confirm they're being done. So we have those. We have supervisors in the area. We have employees in the area. So if one of the cases the plaintiff was citing to and relying on, they only did their cleaning at night at the gas station, that's not this case. This case is... Costco has such a strong and hourly... Not only hourly, but they have so many things in place to make sure they're keeping their warehouse clean. That's why 28 minutes is not sufficient because they're complying with this and they're doing a reasonable job. And there's no basis to say an employee has to be stationed there because that actually is completely against Illinois law, Persil v. Sears, that says that is not a requirement. I'm out of time. Any other questions? Okay. We appreciate it. Thank you. Okay, Mr. Arjonis, we'll give you one minute. Just briefly, we are not alleging that Costco should have had a monitor there 24 hours. We are alleging in one of our accounts that, during lunch, they know there's greater propensity for spills, yet they don't monitor that area more frequently when it's busier. They could, and it would comport with tort law in Illinois, that at the lunch hour rush from 11.30 until 2, there's a person there monitoring with a squeegee or paper towels, picking up spills just because of this issue. Mr. Arjonis, you're not making any sort of claim that the Costco employees were negligent in fulfilling their duties, right? Yes, sir. We are. That's in our complaint. There's two counts, there's premises, and then a direct negligence. We're saying that their policy was, one, unreasonable because of what I just stated, but two, the floor walk that occurred just before this spill, which typically takes one hour, 150,000 square feet of this Costco store, took only 15 minutes, Your Honor. That's at least circumstantial evidence that maybe whoever was doing this floor walk policy may have missed it. And Your Honors, also, the person pushing the mop wasn't a floor walk, wasn't the person doing the hourly searches. You can't see the hourly person in the video, so I'm out of time. We respectfully rest on our brief, unless there's any other questions. Okay. Hearing none, thanks to you, Ms. Volko, thanks to you, we'll take the appeal under advisement. That concludes today's arguments. Thank you. Thank you. Thank you.  Thank you. Thank you.  Thank you. Thank you. Thank you.  Thank you.  Thank you. Thank you.  Thank you. Thank you.  Thank you. Did you do that? Are you good on the audio? Yeah. Okay. You should be good to go. Do you have the little key? Yeah, I'll take it. Okay. And lock this too? Yeah. Okay.